KC FILED
NOV 05 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMONA SHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 07CV6257 |
| v. ) | JUDGE LEFKOW |
| ) | MAGISTRATE JUDGE NOLAN |
| BOARD OF TRUSTEES, ILLINOIS ) | |
| COMMUNITY COLLEGE DISTRICT NO. 508, ) | |
| a/k/a CITY COLLEGES OF CHICAGO; ) | |
| XIOMARA CORTES METCALFE; and ) | |
| WAYNE WATSON, ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Ramona Shaw, by her attorneys, complains of defendants Board of Trustees of Illinois Community College District No. 508, also known as City Colleges of Chicago ("City Colleges"), Xiomara Cortés Metcalfe, and Wayne Watson, as follows:

**Nature of the Action**

1. Ramona Shaw seeks redress against her former employer City Colleges, for race discrimination and retaliation. Plaintiff was denied a promotion because of her race and retaliated against for complaining of discrimination against herself and opposing discrimination and retaliation against other employees, in violation of 42 U.S.C. 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 2000e-3, as amended by the Civil Rights Act of 1991. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff requests a trial by jury.

**Jurisdiction and Venue**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331 and 28 U.S.C. §1343(a)(4).

3. Venue is proper in this judicial district because defendant resides in this district and all of the events giving rise to Plaintiff's claims occurred in this district pursuant to 28 U.S.C. §1391.

### The Parties

4. Plaintiff Ramona Shaw is African-American, resides in Illinois, and was employed by City Colleges for about seven years until City Colleges terminated her employment on December 15, 2006.

5. Defendant City Colleges is a public community college district, organized under the laws of the State of Illinois.

6. Defendant Wayne Watson is, and was at all material times hereto, Chancellor of defendant City Colleges. He is sued in his individual capacity.

7. Defendant Xiomara Cortés Metcalfe is, and was at all material times hereto, Vice Chancellor of Human Resources of defendant City Colleges. She is sued in her individual capacity.

8. Defendants Watson and Cortés Metcalfe exercised supervisory authority over and made hiring, promotion, disciplinary, and other employment decisions concerning plaintiff and other City Colleges employees at all times material hereto.

9. Defendant City Colleges has employed Watson and Cortés Metcalfe at all times material hereto. City Colleges is responsible for the acts of Watson and Cortes-Metcalfe while acting within the scope of their employment.

### Facts Upon Which Claims are Based

10. Ramona Shaw began working for City Colleges in May 1999 as Associate Vice

2

Chancellor of Human Resources and Staff Development.

11.     Ms. Shaw met and exceeded all legitimate performance expectations throughout her employment. Her performance was exemplary.

12.     In December 2003, Ms. Shaw began performing the duties of the position of Vice Chancellor of Human Resources and Staff Development (the "Vice Chancellor position"), when the position became vacant.

13.     In January 2004, Ms. Shaw applied for the Vice Chancellor position, a position for which she was qualified.

14.     Defendants City Colleges and Watson did not appoint Ms. Shaw as interim Vice Chancellor before a formal appointment was made, although she was efficiently and capably performing all of the duties of the position.

15.     In March 2004, Ms. Shaw asked Chancellor Watson why she had not been appointed interim Vice Chancellor, contrary to the practice followed for at least two white employees who were appointed to interim positions. Chancellor Watson stated that he had been pressured by the Mayor's Office to appoint a Hispanic to the Vice Chancellor position.

16.     After Ms. Shaw's inquiry, defendants Watson and City Colleges retroactively appointed her as interim Vice Chancellor.

17.     However, defendants City Colleges and Watson appointed a Hispanic, defendant Xiomara Cortés Metcalfe, to the permanent Vice Chancellor position.

18.     Ms. Shaw was more qualified for the Vice Chancellor position than defendant Cortés Metcalfe.

19.     Ms. Shaw began reporting to defendant Cortés Metcalfe effective April 1, 2004.

20.     Per the Chancellor's instruction, Ms. Shaw began to transition many of her duties

3

to and train defendant Cortés Metcalfe. Ms. Shaw retained her responsibilities as District Director of the payroll, staffing, and EEO units, among others.

21. In September 2006, Ms. Shaw informed Cortes-Metcalfe that an African-American employee within the Office of Human Resources had filed an internal race discrimination complaint, asserting that preferential treatment had been given to a Hispanic employee.

22. Cortés Metcalfe became enraged when she learned of the African-American employee's complaint and stated, "That motherfucker. I'm sick of him. I want him out of here!" Shortly thereafter, a draft disciplinary action was prepared against the African-American employee.

23. Concerned about unlawful retaliation, and consistent with her human resources responsibilities, Ms. Shaw reported Cortés Metcalfe's statements to City Colleges' Ethics Officer/General Counsel.

24. City Colleges' Ethics Officer/General Counsel directed Ms. Shaw to document the incident and told Ms. Shaw that Cortés Metcalfe's conduct raised serious concerns that had to be reported to the Chancellor, the Board of Trustees, and under the State Ethics Act, to the Inspector General of Illinois.

25. In late September 2006, defendant Watson summoned Ms. Shaw to his office for a conference with defendant Cortés Metcalfe and others. During this conference, Ms. Shaw reported Cortés Metcalfe's comments regarding the African-American employee's race discrimination complaint and her concern that the disciplinary action was retaliatory.

26. Thereafter, defendants Watson and Cortés Metcalfe began to shun Ms. Shaw and treat her adversely.

4

27. In November 2006, Ms. Shaw was informed by staff within the Office of Human Resources that defendant Cortés Metcalfe had hired a Hispanic employee at a higher rate of pay than non-Hispanic employees with better qualifications and more seniority. Ms. Shaw received letters from two of her staff members who expressed concern about differential pay.

28. On November 9, 2006, Ms. Shaw reported to defendant Cortés Metcalfe the concerns that she and her staff had about racially discriminatory pay practices.

29. Defendant Cortés Metcalfe retaliated against Ms. Shaw by removing Ms. Shaw's authority to deal with her staff with respect to pay issues and by criticizing Ms. Shaw when she asked Cortés Metcalfe for clarification about the removal of her authority.

30. Shortly thereafter, on December 1, 2006, defendant Cortés Metcalfe, along with Executive Vice Chancellor Deidra Lewis, informed Ms. Shaw that her employment was terminated effective December 15.

31. Defendant City Colleges approved defendant Cortés Metcalfe's recommendation to terminate Ms. Shaw's employment.

## COUNT I
### (§ 1981 – Race Discrimination)

32. Plaintiff restates and realleges by reference paragraphs 1 through 31 above as though fully set forth herein.

33. Defendants City Colleges and Watson intentionally subjected plaintiff to unequal and discriminatory treatment by denying her a promotion to Vice Chancellor because of her race.

34. Defendants' actions constitute racial discrimination in employment in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

35. Defendants' actions in intentionally discriminating against plaintiff caused her severe emotional distress, humiliation, depression, anxiety, physical and emotional pain and

suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

36. Defendant Watson's actions were intentional, willful, and malicious and/or in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

### COUNT II
### (§ 1981 - Retaliation)

37. Plaintiff restates and realleges by reference paragraphs 1 through 31 above as though fully set forth herein.

38. Defendants City Colleges, Watson, and Cortés Metcalfe retaliated against plaintiff for having engaged in the protected activity of complaining of race discrimination against herself and for opposing discrimination against other employees, in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

39. Defendants' actions in intentionally retaliating against plaintiff caused her severe emotional distress, humiliation, depression, anxiety, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

40. The actions of defendants Watson and Cortés Metcalfe were intentional, willful, and malicious and/or in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

### COUNT III
### (Title VII – Race Discrimination)

41. Plaintiff restates and realleges by reference paragraphs 1 through 31 above as though fully set forth herein.

6

42. On May 31, 2007, plaintiff timely filed a charge of race discrimination against defendant City Colleges with the Equal Employment Opportunity Commission ("EEOC"). (A copy of that charge is attached hereto as Exhibit A).

43. On October 29, 2007, plaintiff received a right to sue notice from the U.S. Department of Justice. Plaintiff filed this Complaint within 90 days after her receipt of the right to sue notice.

44. Defendant City Colleges intentionally subjected plaintiff to unequal and discriminatory treatment by terminating her employment because of her race, in violation of 42 U.S.C. §2000e-2.

45. Defendant's actions in intentionally discriminating against plaintiff caused her severe emotional distress, humiliation, depression, anxiety, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

## COUNT IV
### (Title VII - Retaliation)

46. Plaintiff restates and realleges by reference paragraphs 1 through 31 and 42-43 above as though fully set forth herein.

47. Defendant City Colleges terminated plaintiff in retaliation for having engaged in the protected activity of opposing race discrimination, in violation of 42 U.S.C. §2000e-3.

48. Defendant's actions in intentionally retaliating against Plaintiff caused her severe emotional distress, humiliation, depression, anxiety, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

WHEREFORE, Plaintiff prays this court to enter judgment on her behalf and against

Defendants City Colleges, Wayne Watson, and Xiomara Cortés Metcalfe and grant the following relief:

    A.    All wages and benefits she would have received but for the unlawful employment practices, including pre-judgment interest;

    B.    Reinstatement to her former position and/or instatement to the Vice Chancellor position, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

    C.    Compensatory damages;

    D.    Punitive damages against defendants Watson and Cortés Metcalfe;

    E.    Post-judgment interest;

    F.    Attorneys' fees and all costs and expenses of suit;

    G.    Such other and further relief as the Court deems appropriate.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff respectfully requests a trial by jury on all counts.

Respectfully submitted,

_____
One of the attorneys for Plaintiff Ramona Shaw

Fern N. Trevino
Alenna K. Bolin
Antoinette Choate
Law Offices of Fern Trevino
211 West Wacker Drive, Suite 1650
Chicago, Illinois 60606
Tel: (312) 630-4491
Fax: (312) 630-9281

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act See enclosed Privacy Act Statement and other information before completing this form | Charge Presented To: | Agency(ies) Charge No(s). |
|---|---|---|
| | [ ] FEPA<br>[x] EEOC | 440-2007-05429 |
| Illinois Department of Human Rights<br>*State or local Agency, if any* | | and EEOC |

| Name (Indicate Mr, Ms., Mrs.) | Date of Birth |
|---|---|
| Ms. Ramona G. Shaw | |

| Street Address | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| City Colleges of Chicago | 500+ | (312) 553-2510 |

| Street Address | City, State and ZIP Code |
|---|---|
| 226 West Jackson Street, Chicago, IL 60605 | |

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es))*

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER *(Specify below)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest: 1/07
[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*

I was employed with Respondent in May 1999 as Associate Vice Chancellor of Human Resources & Staff Development. Throughout my employment, I received excellent performance appraisals and merit increases.

In April 2004, I began reporting to Xiomara Cortes-Metcalfe, who had been appointed to the position of Vice Chancellor of Human Resources and Staff Development. I had expressed interest in that position, but Chancellor Wayne Watson had told me in March 2004 that the Mayor's Office had pressured him to appoint a Hispanic to the position. Cortes-Metcalfe is Hispanic, and I am African-American.

On September 21, 2006, I informed Cortes-Metcalfe that an African-American employee had filed an internal race discrimination complaint, alleging that preferential treatment had been given to a Hispanic employee. Cortes-Metcalfe stated, "That motherfucker. I'm sick of him. I want him out of here!" Shortly thereafter, a draft disciplinary action was prepared against the African-American employee.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

MAY 3 1 2007

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

I declare under penalty of perjury that the above is true and correct.

April 18, 2007     Ramona G. Shaw
Date               Charging Party Signature



EXHIBIT A

EEOC Form 5 (5/01)

|  | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| **CHARGE OF DISCRIMINATION** <br> This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEP <br> ☒ EEOC | |

Illinois Department of Human Rights                                                                                    and
*State or local Agency, if any*

THE PARTICULARS ARE (*Continued from previous page*)

I reported Cortes-Metcalfe's statements to Respondent's Ethics Officer/General Counsel, Yolande Bourgeois. Ms. Bourgeois directed me to document the incident and told me that Cortes-Metcalfe's conduct raised serious concerns that had to be reported to the Chancellor, the Board of Trustees, and under the State Ethics Act, to the Inspector General of the State of Illinois.

On September 28, 2006, the Chancellor summoned me to a phone conference with Cortes-Metcalfe. During this conference, I read my file notes which documented Metcalfe's diatribe against the African-American employee who had complained of race discrimination.

Sometime between September 28 and October 1, Ethics Officer/General Counsel Bourgeois filed a complaint against Cortes-Metcalfe with the State Attorney General's Office regarding possible retaliation by Cortes-Metcalfe. On November 9, 2006, I reported my concern to Cortes-Metcalfe that a recent hiring action was possibly discriminatory.

On December 1, 2006, Cortes-Metcalfe and the Executive Vice Chancellor notified me that my employment was terminated effective December 15. In January 2007, I received an official notice from Cortes-Metcalfe that the Board of Trustees had approved her recommendation to terminate my employment.

I believe that I have been discriminated against because of my race, African-American, and retaliated against for opposing racially discriminatory conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. <br><br> April 18, 2007     *[signature] Ramona J. Shaw* <br> Date                       Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT <br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (month, day, year) |